# IN THE COURT OF APPEALS OF IOWA

No. 17-0385
Filed September 13, 2017

**IN THE INTEREST OF D.H.,**
**Minor Child,**

**D.H.,**
      Appellant.

_____

Appeal from the Iowa District Court for Clarke County, Monty W. Franklin, District Associate Judge.

An interstate juvenile runaway appeals the juvenile court's order placing the juvenile in secure detention pursuant to the Interstate Compact for Juveniles. **REVERSED.**

Mathew D. Zinkula of Booth Law Firm, Osceola, for appellant.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

D.H. appeals a detention order placing D.H. in secure detention pursuant to the Interstate Compact for Juveniles (ICJ).  The State claims the issue is moot now that D.H. has been returned to Nevada.  D.H. claims an exception to the mootness doctrine should apply.  Because the juvenile court failed to exercise its discretion, we reverse.

**I. Background Facts and Proceedings.**

On March 7, 2017, the juvenile court officer for Clarke County, Iowa filed an application for the detention of D.H.  The application alleged D.H. was being held under a pick-up warrant for another jurisdiction because D.H. was reported as a runaway from the state of Nevada.  On March 8, a detention hearing was held, and D.H. agreed to be extradited to Nevada.

During the hearing, D.H. requested shelter care in place of secure detention, citing Iowa Administrative Code chapter 143.  In response, the court stated:

> [B]y adopting the ICJ, the State of Iowa has agreed to abide by the rules and requirements of that compact.  One of those rules is that the ICJ requirements supersede and take the place of any Iowa laws or rules that are in conflict with the ICJ.
> The ICJ requires that a child being held for return to the requesting state be held in a secure facility.  The only secure facility in the State of Iowa is the detention facility.  Since the ICJ requirement supersedes Iowa law, there is no prohibition from keeping [D.H.] in detention, and that is required under the ICJ, and that will be the Court's order that she remain in detention pending her return to the state of Nevada.

The court issued a written detention order, confirming the placement of D.H. in a secure detention facility until D.H's return to Nevada.  D.H. appealed the detention order.

On March 14, the juvenile court officer filed an application for release from detention. The application requested that D.H. be released from detention on March 15 for a return flight to D.H.'s home state of Nevada. The juvenile court approved the application, and D.H. was returned home the next day. On April 20, the State filed a motion to dismiss D.H.'s appeal, arguing the case was moot since D.H. was released from custody. Our supreme court ordered the parties to submit the issue of mootness with the appeal.

**II. Standard of Review.**

We review equity actions de novo. *In re A.K.*, 825 N.W.2d 46, 50 (Iowa 2013) ("We have continued to assert that juvenile proceedings are in equity and subject to de novo review.").

**II. Discussion.**

**A. Mootness.**

The State claims D.H.'s controversy is moot as D.H. was released from detention and returned to Nevada on March 15. D.H. claims an exception to the mootness doctrine applies because placing a nondelinquent in detention is a matter of public importance that requires further authoritative guidance.

It is a fundamental aspect of our courts that a controversy exists before the case is resolved on appeal. *See In re T.S.*, 705 N.W.2d 498, 501 (Iowa 2005) ("We do not decide cases where there is no longer any actual controversy, unless we exercise our discretion and decide the case under an exception to the mootness doctrine."); *see also Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015). "Ordinarily, an appeal is moot if the 'issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" *In re*

*B.B.*, 826 N.W.2d 425, 428 (Iowa 2013) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002)). Moot issues are generally not reviewable on appeal. *See id.* "The test is whether the court's opinion would be of force or effect in the underlying controversy." *In re D.C.V.*, 569 N.W.2d 489, 494 (Iowa 1997). "As a general rule, we will dismiss an appeal 'when judgment, if rendered, will have no practical legal effect upon the existing controversy.'" *In re M.T.*, 625 N.W.2d 702, 704 (Iowa 2001) (citations omitted).

An exception to this rule exists "where matters of public importance are presented and the problem is likely to recur." *Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 922 (Iowa 1983). In determining whether an exception exists, we analyze the following factors: (1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review. *T.S.*, 705 N.W.2d at 502.

Our supreme court has applied this exception to resolve procedural discrepancies occurring in involuntary commitment proceedings involving juveniles. *See id.*; *see also In re S.P.*, 719 N.W.2d 535, 537 (Iowa 2006) (applying exception to mootness doctrine to an involuntary civil commitment hearing). In *T.S.*, for example, a juvenile appealed the procedural aspects of an involuntary commitment hearing. *See* 705 N.W.2d at 502. The juvenile argued a county attorney should not participate in the proceeding as a non-applicant and a physician's presence is required at the hearing. *See id.* at 501. The juvenile, however, was discharged from commitment before the issue was resolved on

appeal. *See id.* The court held, "It is desirable for the courts and our public officials to have an authoritative adjudication of these issues." *Id.* The court discussed the likelihood that these procedural issues will recur and evade review based on the "the time it takes to process an appeal and the likelihood a commitment will terminate before the appeal process can be completed." *Id.* at 502. The court also noted the "great public importance" of involuntary commitment hearings that "occur on a daily basis." *Id.*

The issues raised in *T.S.* were unresolved procedural issues not squarely addressed by statutes, regulations, or caselaw. D.H. claims there is a need for authoritative guidance because her situation illustrates a conflict between the ICJ and Iowa law prohibiting detention of nondelinquent juveniles. Specifically, D.H. claims the Iowa Administrative Code conflicts with the ICJ's rules and regulations codified by Iowa law. We agree.

The Iowa Administrative Code prohibits D.H.'s placement in detention. The relevant section states, "Any nondelinquent runaway from another state found in Iowa shall be held *only in a nonrestrictive shelter facility* until returned to the state of legal residence." Iowa Admin. Code r. 441-143.3(2) (emphasis added). In contrast, the ICJ rules were amended in 2015 to include discretion in detaining voluntary-return runaways, such as D.H. (effective February 2016).[1] The relevant addition to the existing rules states:

> Runaways and accused status offenders who are a danger
> to themselves or others shall be detained in secure facilities until

---

[1] The Iowa Code incorporates all ICJ rules upon their effective date. *See* Iowa Code § 232.173(6)(b) (2017) ("All [ICJ] rules and amendments shall become binding as of the date specified, as published with the final version of the rule as approved by the commission.").

returned by the home/demanding state. The holding state shall have the discretion to hold runaways and accused status offenders who are not a danger to themselves or others at a location it deems appropriate.

*See* Interstate Compact for Juveniles: Serving Juveniles While Protecting Communities r. 6-102(1) (2016), http://www.juvenilecompact.org/LinkClick.aspx?fileticket=hvMqJ-56kQk%3d&tabid=487. Thus, under the ICJ, runaways who are a danger to themselves or others require detention in secure facilities, whereas the juvenile court has discretion to place other runaways at an "appropriate" location. *See id.* The Iowa Administrative Code, however, prohibits "any nondelinquent" runaway from placement detention, which creates a contradiction in Iowa law on the issue of nondelinquent juvenile placement. *See* Iowa Admin. Code r. 441-143.3(2).

The juvenile court's interpretation of the laws related to the detention of runaways further illustrates the need for authoritative guidance on the issue. The juvenile court did not address, nor did D.H. raise, the question whether she was a danger to herself or others such that secure detention would have been within the discretion of the district court under the ICJ. Rather, the juvenile court's verbal order at the hearing erroneously assumed it had no discretion to choose a shelter placement rather than detention. Accordingly, the need for authoritative guidance on the issue favors applying an exception to the mootness doctrine.

D.H. also argues the mootness exception should apply because this issue is of great public importance, likely to recur, and likely to evade appellate review. Juvenile runaways occur frequently. *See, e.g.*, C. Puzzanchera & Kang, W., Easy Access to FBI Arrest Statistics: 1994-2012 (2014),

https://www.ojjdp.gov/ojstatbb/ezaucr/asp/ucr_display.asp (stating 93,400 juveniles were alleged as runaways nationwide); Iowa Department of Public Safety, Iowa UCR Report, Iowa/Regional/U.S. Comparison Reports (April 26, 2017), http://www.dps.state.ia.us/commis/ucr/ (stating 69 juveniles were seized by law enforcement in 2015). The placement of juveniles who are brought within the parameters of the Iowa juvenile justice system is a matter of grave importance. *See T.S.*, 705 N.W.2d at 502 (holding the procedural aspects of placement of a juvenile pursuant to an involuntary civil commitment hearing "are of great public importance"). Nondelinquent runaway juveniles may seldom be within our borders for a period of time sufficient to allow for resolution of an appeal, as demonstrated by D.H.'s circumstances. For these reasons and because there may be confusion about the interplay of the ICJ and Iowa's prohibition against detention found in Iowa Administrative Code rule 441-143.3(2), we do not dismiss the appeal for mootness.

**B. Merits.**

D.H. claims the district court erroneously ordered her to be detained in a secured detention facility. The State argues the juvenile court was permitted to order secure detention pursuant to the ICJ rules and laws adopted by Iowa. We agree with D.H.

While the Iowa Administrative Code prohibits the detention of nondelinquent runaways, the Iowa Code section adopting the ICJ contains conflicting provisions that preempt Iowa Administrative Code. *See* Iowa Code § 232.173 ("All compacting states' laws other than state constitutions and other interstate compacts conflicting with this compact are superseded to the extent of

the conflict."). Additionally, the ICJ rules were amended in 2015 after the relevant Iowa Administrative Code section became effective in 2008. The relevant ICJ section on placement of nondelinquent runaways requires detention for juveniles who are a danger to themselves or others but allows the juvenile court to exercise its discretion in all other circumstances. *See* Interstate Compact for Juveniles r. 6-102(1). Neither provision of the rule was applied by the juvenile court.

Here, a hearing was held, and D.H. agreed to be returned to Nevada, but the court determined secure detention was required to hold D.H. until extradition could occur. We disagree that secure detention was required. Secure detention is only required for runaways "who are a danger to themselves or others." *See id.* We see nothing in the record to conclude, nor did the juvenile court find, D.H. was a danger to herself or others.[2] While the juvenile court could have exercised its discretion to hold D.H. in a location it deemed appropriate—e.g., secure detention—such discretion was not exercised by the court. Accordingly, we hold the juvenile court erred by failing to exercise its discretion to determine

---

[2] The juvenile court did not address, nor did D.H. raise, the question of whether she was a danger to herself or others such that secure detention would have been within the discretion of the district court. Rather, the juvenile court's verbal order at the hearing assumed it had no discretion to choose a shelter placement rather than detention. The State argues D.H. failed to preserve error on the absence of a finding of dangerousness. However, we believe the issue of D.H.'s dangerousness was inherent in D.H.'s request to be placed in shelter care. *See Estate of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 585 (Iowa 2017) ("[W]e recognize an exception to the general error-preservation rule when the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel."). Moreover, the juvenile court's error is based on its failure to exercise discretion to determine the proper placement of D.H., a decision that requires a determination of dangerousness. *See* Interstate Compact for Juveniles r. 6-102(1).

the appropriate placement for D.H., including hearing evidence on the question of whether D.H. posed a danger to herself and others.

**IV. Conclusion.**

The State released and returned D.H. to Nevada before D.H.'s appeal was resolved. The Iowa Code adopting the ICJ and the accompanying rules established by the Interstate Commission on Juveniles, along with our administrative code contemplates the controversy raised by D.H., but it also creates an issue not yet decided by our supreme court. We decline to dismiss D.H.'s claim as moot; the conflict creates the need for authoritative guidance, and juvenile detention of nondelinquent runaways is a matter of public importance likely to recur but evade review. The juvenile court erred by failing to determine whether D.H. was a danger to herself or others and to exercise its discretion in the critical placement decision for D.H.

**REVERSED.**