# IN THE COURT OF APPEALS OF IOWA

No. 18-2130
Filed March 6, 2019

**IN THE INTEREST OF A.G., G.M., and T.M.,**
**Minor Children,**

**B.M., Father of G.M. and T.M.,**
     Appellant.
_____


     Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


     A father appeals the order terminating his parental relationship with two

children, ages five and two years.  **AFFIRMED.**


     Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for

appellant father.

     Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

     Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem

for minor children.


     Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A father, Brian, appeals the juvenile court order terminating his parental relationship with G.M., born in January 2014, and T.M., born in September 2016.[1] The court granted the State's petition to terminate based on the father's ongoing issues with substance abuse, mental health, and physical violence.[2]

In his petition on appeal, Brian raises seven issues: (1) Did the State prove termination was proper under Iowa Code section 232.116(1) subsections (f) and (h) (2018)? (2) Was termination in the children's best interests? (3) Was termination detrimental to the children because of their close relationship with Brian? (4) Did the State breach Brian's right to confidentiality by offering evidence from his substance-abuse counselor and mental-health provider? (5) Should the court have granted Brian six more months to reunify with his children? (6) Should the children have been placed with relatives rather than in foster care? And (7) should the court have honored the parents' request for increased visitation?

After reviewing the record, we find none of these issues requires reversal.[3] The State established Brian was not a safe custodial option for these children and moving promptly toward permanency promotes their welfare.

---

[1] The juvenile court also terminated the parental relationship of the mother, Sadie, with G.M. and T.M., as well as their half-sibling A.G. The supreme court dismissed her appeal as untimely. In the termination same order, the juvenile court terminated the parental rights of A.G.'s father, who consented to the action and does not appeal.

[2] The violence included an involuntary-manslaughter conviction for causing the death of his two-month-old child.

[3] We review Brian's claims de novo, which means we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Although we are not bound by them, we give weight to the juvenile court's factual findings, especially as to witness credibility. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we have no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the

## I.    Facts and Prior Proceedings

The Iowa Department of Human Services (DHS) took notice of A.G., G.M., and T.M. when the family moved to Iowa from Minnesota where they had open child-welfare cases.  The Iowa juvenile court adjudicated the children in need of assistance (CINA) in August 2017.  The parents, Brian and Sadie, did not consistently engage in services.  Both parents tested positive for methamphetamine in December 2017, yet denied any drug use.

In January 2018, the juvenile court found the parents had not been honest about Sadie's pregnancy.[4]  T.F.M. was born in February 2018.  The juvenile court ordered T.F.M. removed from her parents' care two days after her birth.[5]

Brian did not show a strong commitment to overcoming his substance-abuse problem.  Brian told providers he was only attending treatment "because he is required to but does not actually believe he has any substance abuse issue."  At the DHS Family Team Meeting in mid-April, the caseworker asked the parents to provide drug screens and they refused to do so.  The court considered those screens to be positive.  The father also tested positive for methamphetamine in May.  The court found Brian's "continued decision to associate with unsafe persons shows a lack of insight and understanding of his substance abuse needs."

In June 2018, the court directed the State to file a petition to terminate parental rights.  The court focused on the parents' unresolved mental-health issues

---

evidence."  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

[4] Sadie had denied being pregnant until approximately two months before the child's birth.

[5] The juvenile court terminated Brian's parental relationship with T.F.M. in a separate order, which he also appealed.  We are also filing our decision in that case today.  *In re T.M.*, No. 18-2137, 2019 WL _____ (Iowa Ct. App. Mar. 6, 2019).

and Brian's "physical and verbal aggression towards the children." The court noted Brian was initially "dishonest" in denying "any history of child abuse" but after further questioning, he admitted a conviction for manslaughter in the death of his child, D.M.[6] Brian also had a founded child-abuse assessment for indecent contact with a child.[7] The State filed its petition in July 2018.

The juvenile court held the termination-of-parental-rights hearing for A.G., G.M., and T.M. over three days in August and September 2018. On the first day, Sadie appeared in court with a fresh black eye. Sadie said she was "mugged" on her way home from work the night before. The juvenile court noted: "When questioned by the police officer, [Sadie] denied [Brian] assaulted her but when the office asked about his whereabouts, [Sadie] stated he went out to get something to drink because he was upset about the assault and injuries." The juvenile court found Sadie's version of events lacked credibility.

To prove termination of his parental rights was appropriate, the State called Brian's substance-abuse and mental-health treatment providers. They both testified Brian admitted selling methamphetamine during the pendency of the CINA case. Brian also testified at the termination hearing. He denied using drugs during the CINA case. When asked about dealing methamphetamine, he invoked his privilege against self-incrimination. Brian denied assaulting Sadie before the hearing. The court found Brian had unresolved aggression issues as evidenced

---

[6] According to DHS reports, Brian was convicted of manslaughter in connection with the October 2000 shaken-baby death of his two-month-old child. At the termination hearing, Brian denied responsibility for the death of D.M.

[7] According to DHS reports, in 2010, Brian inappropriately touched a child's buttocks while she was asleep.

by his demeanor during court when asked questions about his prior criminal convictions and founded sexual-abuse allegations.

The court issued its order terminating parental rights in November 2018. Brian now appeals.

## II.    Analysis

We start with Brian's challenge to the statutory grounds for termination—Iowa Code section 232.116(1), paragraphs (f) (as to G.M.) and paragraph (h) (as to T.M).  The State claims Brian did not preserve error because he requested an additional six months to work toward reunification.  We find the father's request for a delay in permanency was in the alternative to his contention the State did not present clear and convincing evidence to support termination.  Accordingly, we reach the merits of his sufficiency argument.

Paragraphs (f) and (h) differ only as to the ages of the children and the amount of time they must be removed from the home.  Both G.M. and T.M. lived outside the home for longer than twelve consecutive months, both were adjudicated as CINA, and both met the requisite age requirements.  The only question remaining is whether the court could safely return G.M. and T.M. to Brian's care at the time of the termination hearing.  *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

The State offered clear and convincing evidence Brian could not be a reliable parent for his two-year-old daughter and four-year-old son—given his criminal history, including an involuntary manslaughter conviction for the death of another child, and his current unstable lifestyle.  Brian did not have a steady source of income; Sadie testified he relied on selling plasma to pay the bills.  His

commitment to substance-abuse treatment was "superficial." And testimony at the termination hearing revealed he sold methamphetamine during the pendency of this case. Brian's continued exposure to illegal substances posed a continuing risk to the children. Termination of parental rights was proper under paragraphs (f) and (h).

We next turn to Brian's second and third arguments, that the juvenile court should have foregone termination because it was not in the children's best interests and would be detrimental to them because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(2),[8] (3)(c).[9] Under the three steps in the code, even if the statutory grounds are met, the juvenile court must consider whether termination is in the child's best interests under the section 232.116(2) framework and whether any of the factors in section 232.116(3) tip the scales away from termination. *In re P.L.,* 778 N.W.2d 33, 40–41 (Iowa 2010).

The juvenile court recognized safety is at the forefront of any best-interest determination. And the children could not be safely reunited with Brian because he had not adequately addressed his substance abuse, mental health, or aggression issues. As for the closeness of their relationship, the social workers did observe an affectionate bond between Brian and the children during visits. But the record did not show severing ties with Brian would be more harmful to the children than waiting for their father to become a fit parent. *See In re A.S.,* 906

---

[8] "[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

[9] "The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

N.W.2d 467, 476 (Iowa 2018) (placing burden on parent to prove "exception to termination"). We do not find a reason in section 232.116(2) or (3) to deny the termination petition.

As his fourth issue, Brian alleges the State violated his right to confidentiality by offering evidence from his substance-abuse counseling and mental health treatment. He cites *In re A.M.*, 856 N.W.2d 365, 377 (Iowa 2014), in which our supreme court recognized the "importance of confidentiality to mental health treatment." But Brian does not analyze its application to his case.

Substance-abuse counselor Natalie Brown told the court Brian admitted selling methamphetamine during the CINA cases as a source of income. His mental health therapist, Amanda Burgod, testified Brian was diagnosed with generalized anxiety disorder, bipolar II disorder, and unspecified trauma disorder. Brian also reported to Burgod that he sold methamphetamine. Both providers testified Brian signed a release allowing them to share confidential information with the DHS but asked them not to discuss the methamphetamine sales.

The State argues those releases distinguish this case from *A.M.*, where the mother did not waive privilege when her therapist was called to testify. 856 N.W.2d at 371. Moreover, in *A.M.*, our supreme court decided the legislature balanced the competing public policies—a mental-health patient's right to privacy and the State's interest in ensuring the safety and welfare of children in need of assistance—in favor of access to information in the child-welfare proceedings. *Id.* at 378; *see also* Iowa Code § 232.96(5) (stating "the privilege attaching to confidential communications between a health practitioner or mental health professional and patient" shall not be grounds for excluding evidence at a child-

welfare hearing). Without a more substantive argument on Brian's behalf, we cannot find he is entitled to relief under *A.M.*

In his fifth issue, Brian asks for more time to reunify with the children. To continue placement for an additional six months, Iowa Code section 232.104(2)(b) requires the juvenile court to determine the need for removal will no longer exist at the end of the extension. In considering a delay in permanency, the court must bear in mind "if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005). We do not favor an extension in this case. Brian has a long track record of child abuse—resulting in the death of one infant—as well as serious drug addictions. He has not come close to resolving these concerns. The record does not show six more months of services would prevent termination.

In Brian's sixth issue, he argues the juvenile court erred in approving foster care over relative placement for the children. His petition on appeal cites statutes and case law discussing relative notification and placement but does not specify how this authority impacts his particular situation. *See* Iowa Code §§ 232.84(2), .117(3)(c); *In re N.V.*, 877 N.W.2d 146, 150 (Iowa Ct. App. 2016) (analyzing intervenor claims). Accordingly, we find no basis to grant relief.

In his seventh and final issue, Brian raises a reasonable-efforts argument. Specifically, he contends the juvenile court should have granted the parents' request for increased visitation. Although the DHS is obliged to make reasonable efforts toward reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate." *See In re L.M.*, 904 N.W.2d

835, 839–40 (Iowa 2017). Brian does not identify when he alerted the juvenile court that the frequency or duration of his supervised visits were inadequate.

Assuming Brian did not waive this issue, we find the supervised visitation extended the parents was appropriate to the children's needs. Brian and Sadie had two-hour visits with all four children twice weekly. Given the ongoing concerns about Brian's substance abuse and aggressive behavior, it would not have been consistent with the children's best interests to move toward more extensive or unsupervised visits.

**AFFIRMED**