# IN THE COURT OF APPEALS OF IOWA

No. 19-0914
Filed September 25, 2019

**IN THE INTEREST OF D.M., T.G., T.G., L.G., and T.G.,**
**Minor Children,**

**L.C., Mother,**
 Appellant,

**T.G., Father,**
 Appellant.

_____


 Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.


 A mother and father appeal the termination of their parental rights to five minor children.  **AFFIRMED ON BOTH APPEALS.**


 Christopher R. Kemp of Kemp & Sease, Des Moines, (until withdrawal) and Deborah L. Johnson of Deborah L. Johnson Law Office PC, Altoona, for appellant mother.

 Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, for appellant father.

 Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

 Erin Mayfield of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Greer, JJ.

**GREER, Judge.**

A mother and father separately appeal the termination of their parental rights to five minor children. On our review, we affirm.

## I. Background Facts and Proceedings.

The father, T.G., and the mother, L.C., are the parents of five minor children born in 2010, 2012, 2014, 2015, and 2017.[1] Since 2015, when one of the children was born with THC in his system, the family has been involved with the Iowa Department of Human Services (DHS). Upon meeting the family, DHS noted additional concerns, including the parents' failure to enroll the oldest child in school, the family's unstable housing, warrants for the mother's arrest, and the father's drug and domestic-violence criminal history. Exposure to excessive violence in the familial home triggered significant reactive and aggressive behavior in the oldest four siblings. As a result, they required ongoing therapy throughout the proceedings leading to termination.

Because of these ongoing issues, on February 4, 2016, the juvenile court removed the four oldest children from the home and placed them with the paternal grandmother. Following the removal, on March 8, all four children were adjudicated children in need of assistance (CINA). In October, the grandmother dropped the children off with the mother because she could no longer care for them. Despite the earlier removal, the juvenile court allowed the children to stay with the mother under DHS supervision.

---

[1] At first, L.C. insisted her relationship with T.G. ended one year before the youngest child was born. L.C. was adamant that her new paramour, and not T.G., was the biological father of her youngest child. Paternity testing later established that T.G. is the child's biological father.

Multiple allegations of domestic abuse between the mother and father and the mother and her new paramour required a second removal in June of 2017. Despite claims of separate living arrangements, the parents conceived a fifth child, born in December 2017. This child was removed from the parents at birth. The court adjudicated her a CINA on January 12, 2018. The court issued its permanency ruling in December 2018 recommending the State proceed with termination of parental rights of all the children.

At the time of the termination hearing and for the twenty previous months, custody of the four older children remained out of their parents' care. The youngest child was in foster care for the fourteen months since her birth.

Citing the children's best interests, on May 19, 2019, the juvenile court found that the State had established grounds for termination and no exceptions applied to prevent termination. The court terminated the mother's and the father's parental rights to all five children. The parents appeal. We will discuss other facts below, as relevant.

## II. Standard of Review.

Our review of termination of parental rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the children's best interests. *Id.*

## III. Analysis.

To begin, we use a three-step analysis to review termination-of-parental-rights cases under Iowa Code chapter 232 (2019). *See In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). If the State establishes a ground for termination under Iowa

Code section 232.116(1), we then consider whether termination is in the children's best interests. *Id.* If the best-interests framework supports termination, we must consider whether any statutory exceptions exist to preclude termination of parental rights. *See* Iowa Code § 232.116(3); *P.L.*, 778 N.W.2d at 39–40.

The mother and father's parental rights were terminated under Iowa Code section 232.116(1)(f)[2] as to the three oldest children, and under section 232.116(1)(h)[3] as to the two youngest children. These parents separately appeal, and we separately address the termination of their parental rights.

**A. Mother.** On appeal, the mother argues: (1) the State failed to prove that she could not assume custody of the children; (2) termination is not in the children's

---

[2] Termination is appropriate under section 232.116(1)(f) if the State can show all of the following,

    (1) The child is four years of age or older.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[3] Termination is appropriate under section 232.116(1)(h) if the State can prove all of the following,

    (1) The child is three years of age or younger
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

best interests; and (3) the juvenile court should have granted her a six-month extension to reunite with the children.

1. *Statutory grounds for termination.* The mother only challenges the final element of Iowa Code section 232.116(1)(f) and (h): whether she could resume custody of the children. We conclude that the State has proved this element by clear and convincing evidence. The mother has failed to address her housing instability, inconsistently attended therapy, failed to follow through on substance-abuse treatment, and only sporadically participated in domestic-violence services. Despite the violence the father has perpetrated on the mother, the court found the parents were still "in a toxic, dysfunctional relationship." The court also noted that the parents were deceitful about their living situation and relationship status. Even at the time of the termination hearing, it was unclear whether they were living together.

As for parenting concerns, the mother lacked understanding of the negative impact of domestic abuse on the children. Claiming that her parenting was not an issue, she failed to appreciate that her children's aggressive behaviors were abnormal. In that regard, follow-through with the children's counselors was missing. Given these ongoing issues, we conclude the State has proven that the children could not be returned to the mother's care.

2. *Best interests.* The mother argues termination is not in the children's best interests. We disagree. After experiencing violence in the family home, all four oldest children remain in therapy to address the impact of trauma and to address their aggressive behaviors following visits with the mother. Because the youngest child has never lived with her parents, she has no bond with them.

Addressing the best interests, two of the children's therapists recommended ceasing visits with the mother because they harmed the child's wellbeing. As an example, a therapist reported that during a phone call between the mother and another child, the mother "encouraged him to hit back if peers hit/hurt him." Eventually, DHS stopped visits between the mother and the children "due to her unaddressed mental health and inability to control her emotions" after she had an angry outburst at the DHS office before a visit. Despite all of this, the mother does not understand or acknowledge her parenting deficiencies and her role in the trauma the children have experienced. We conclude termination is in all the children's best interests.

3. *Six-month extension.* Alternatively, the mother requests a six-month extension to reunite with her children. "In order to continue placement for six months, the statute requires the court to make a determination that the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

After considering all of the evidence and recommendation of specialists, the juvenile court found no reason to give the mother another six months. We do not either. History establishes that the mother cannot make the necessary changes in the next six months. Based on these facts, a six-month extension is not appropriate.

**B. Father.** The father challenges the statutory grounds for termination and the State's reasonable efforts to reunite him with the children, and he argues there is an exception to termination for the oldest child because she is currently placed with the paternal grandmother. We conclude all of his claims lack merit.

1. *Grounds for termination.*

i. *Youngest child.*  The father argues the court never removed the youngest child from his physical custody and there were no grounds to remove the child after his paternity was established.  *See* Iowa Code § 232.116(1)(h)(3).  There is no evidence the father raised this issue at the juvenile court.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  In any event, the father's argument fails because the child's removal from the mother's physical custody was for the requisite amount of time.  *See In re W.D.*, No. 18-0151, 2018 WL 1433058, at *2 (Iowa Ct. App. Mar. 21, 2018) ("[T]he requisite removal time period . . . clock started running when the child was removed from the mother.  As we previously stated, 'removal of the child from the mother is sufficient to support termination of the father's parental rights.'" (quoting *In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *3 (Iowa Ct. App. Mar. 22, 2017))).

Even if the father had raised this issue in the juvenile court, we have no reason to believe the court would have placed the child in his custody.  Although he visited this child, he often lacked necessary supplies and visitation never moved to an unsupervised status.  More importantly, when the father filed a motion for visits with the youngest child, he had not addressed the domestic-violence issues that led to the older children's removal.  During his incarceration, the father failed to participate in suggested services.  After his release in January 2018, he did not start therapy until April 30.  Even then, his participation in the Iowa Domestic Abuse Program did not start until August, and there is no indication in the record that he

ever completed this program. Consequently, the effort required for reunification was absent.

ii. *All children.* The father also argues the State failed to prove the children could not be returned to him at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). We disagree. As the juvenile court noted in the termination order, "The father cannot and/or will not understand his role in exposing the children to violence and long lasting trauma[.]" He had not taken accountability for his actions, and he was only beginning to understand trauma and how it impacted them. The court noted the father had not adequately participated in mental-health and substance-abuse treatment. We conclude the father could not resume custody of the children at the time of termination.

2. *Reasonable efforts.* The father argues DHS failed to make reasonable efforts to return the children to him by (1) conspiring against him and (2) failing to notify his mother of the June 2017 removal. The DHS must "make every reasonable effort" to return children to their home "as quickly as possible consistent with" their best interests. Iowa Code § 232.102(9). But DHS need only provide services that "are reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

The juvenile court considered and rejected his first argument in a detailed CINA ruling on July 12, 2018, denying the father's motion for reasonable efforts.[4]

---

[4] Efforts included: family team meetings, substance-abuse evaluations, parenting classes, domestic-violence services, FIP, employment assistance, protective daycare, child-care reimbursement, free store referral, Caring Dad's referral and classes, play therapy, concurrent-planning staffing, bus passes, gas cards, supervised visitations, parent-partner referral, and housing assistance.

The father does not raise any new claims on appeal. We agree with the juvenile court that DHS made reasonable efforts to reunite him with the children.

As to the second argument, DHS has a duty to notify certain relatives of a child's removal from the parent. *See In re N.V.*, 877 N.W.2d 146, 150–52 (Iowa Ct. App. 2016). However, this right belongs to the relative and not the parent, and the father lacks standing to argue his mother's rights in this termination case. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding one party did not have standing to raise arguments on another party's behalf in an effort to obtain a reversal of the termination order). *But see In re R.B.*, 832 N.W.2d 375, 382 (Iowa Ct. App. 2013) (finding father suffered no injustice where DHS failed to notify his mother of the removal, after assuming, without deciding, his right to object on behalf of his mother). In any event, the evidence supports the inability of the grandmother to care for all the children after the June 2017 removal.[5] Even after the father went to stay with the grandmother in April 2018, she still did not reengage with the children. Moreover, when the court allowed her motion to intervene and granted her custody of the oldest child in December 2018, it declined to grant her custody of the other children. There is no evidence she was willing or able to care for the children in June 2017.

3. *Best interests.* The father argues termination of his parental rights is not in the children's best interests. Although he blames others, the father has never parented the children on his own and never progressed beyond supervised visits

---

[5] The grandmother went nineteen months with no contact after relinquishing control of the four grandchildren back to the mother and took medical leave for mental-health concerns of her own.

with any of the children. In fact, therapists for three of the children suggested stopping visits with the father because of the children's fear of their father and the negative impact the visits had on the children.[6] The father minimizes the abuse he perpetrated on the mother as well as the trauma the abuse caused his children.

As noted, the children are thriving in their current placements. Although one of the children is not currently in a pre-adoptive placement, the court "will not refuse to terminate the rights of parents who would otherwise be terminated because an adoptive home has not been secured." *In re. M.L.T.*, No. 10–1633, 2011 WL 1584996, at *1 (Iowa Ct. App. Apr. 27, 2011). We agree with the juvenile court that termination of the father's parental rights is in the children's best interests.

4. *Exception to termination.* The father argues there is an applicable exception to terminating his parental rights to the oldest child because she is in the grandmother's custody. *See* Iowa Code § 232.116(3)(a) (providing an exception to termination when a relative has legal custody of the child). The court may apply this permissive exception "based on the unique circumstances of each case and the best interests of the child." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (quoting *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016)). It is the father's burden to prove the exception applies. *Id.* at 476.

We decline to apply any exception to termination under these facts. Given the emotional struggles of the oldest child, permanency must be primary. She is thriving in the paternal grandmother's care. Thus, we see no reason to deny this

---

[6] The juvenile court detailed the counselor descriptions of each of the older children's reactions to contact with the father based on the violent past they had all experienced with him mitigating against further contact. As for the youngest child, no bond existed with the father.

child the stability and permanency she needs. We agree with the juvenile court that no unique circumstances exist to warrant applying the section 232.116(3)(a) exception to termination.

**IV. Disposition.**

For all of the above stated reasons, we affirm the juvenile court's termination of the mother and father's parental rights to all five children.

**AFFIRMED ON BOTH APPEALS.**