# IN THE COURT OF APPEALS OF IOWA

No. 15-2022
Filed February 24, 2016

**IN THE INTEREST OF N.V.,**
**Minor Child,**

**S.B. and J.B., Intervenors,**
**Appellants,**

**M.I., Intervenor,**
**Appellant.**

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

Intervenors contend the juvenile court should have transferred guardianship of the child to them and, alternatively, should have modified placement to a relative. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Ellen R. Ramsey-Kacena, Cedar Rapids, for intervenors S.B. and J.B.

Caitlin L. Slessor of Shuttleworth & Ingersoll, Cedar Rapids, for intervenor M.I.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Kathryn K. Lang, Assistant Attorneys General, for appellee State.

Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Following the termination of parental rights to a child, the juvenile court considered the motions of the child's great-aunt and grandparents to transfer guardianship of the child from the Iowa Department of Human Services to either of them or alternatively modify the disposition to have the child placed with one of them, rather than a non-relative. The juvenile court denied the motions. Because the department breached its duty to notify relatives of the pending proceedings, overlooked violations in the foster parent's in-home daycare center, and ignored a court order authorizing consideration of relative placements, we reverse and remand.

## I.    *Background Facts and Proceedings*

The child, born in 2010, lived with his mother and the mother's boyfriend. The department became involved in 2013 after learning of multiple bruises on the child. The department issued a founded report of child abuse naming the mother's boyfriend as perpetrator.

Three months later, the department was informed that the boyfriend pushed the child down the stairs and the child sustained a black eye and bruising all over his body. Again, the department issued a founded report of physical abuse against the boyfriend.

The State filed a child-in-need-of-assistance petition in February 2014, but did not seek removal of the child from the mother's care. Instead, the department implemented "two rounds of safety services" in the home.

The department received a third complaint of injuries a month later. The agency determined the complaint was unfounded. At this time, the child's

maternal grandfather and step-grandmother took the child into their care to allow the mother to get her affairs in order. The department was aware of this action and voiced no objection. Indeed, the department facilitated visits between mother and child at the grandfather's home.

The child's mother, who had a strained relationship with the step-grandmother, made threats against her. The grandfather reported these threats to the department and, according to department personnel, said he would return the child to the mother's care if the department did not address them. The department declined to take action. In its view, the dispute "was between [the mother] and [grandfather]." In the same report, the department acknowledged the mother wished to have "a family member such as her father or her aunt to be able to care for [the child] if she is unable to do so." The department recommended "[p]lacement with the mother."

The juvenile court entered an "adjudication/disposition order" stating "custody of the child [would] remain with his mother under the protective supervision of the [department]." The mother was to "allow no contact between the child and [the boyfriend]."

Two months later, the child's mother was seen with her boyfriend as she left the home of her daycare provider. Based on the mother's violation of the no-contact provision, the court removed the child from the mother's care and transferred him to the temporary custody of the department for placement in foster care. The removal order authorized the department "to utilize a relative placement for the child[] in lieu of foster family care, so long as criminal history and child abuse checks are immediately completed regarding every member of

the household and so long as a completed home study is prepared **within 10 days of the date of this order.**" This notice was not sent to the great-aunt or grandfather and the department conceded it failed to separately notify either relative of the child's removal from his mother's care. The department also failed to investigate the relatives' homes for potential placement, as authorized by the court and requested by the mother.

Three months elapsed. The juvenile court issued an order continuing custody of the child with the department and concluding placement with his daycare provider was "the least restrictive placement in the child's best interests." Again, the relatives received no notice of this order.

Seven more months elapsed. The grandparents filed a motion to intervene, asserting the case "may be set to proceed to trial on the termination of the biological parents' parental rights" and they wished to have the child placed in their care and custody and be considered as adoptive parents. They subsequently sought visitation with the child. The juvenile court summarily denied the motions. The court expressed a willingness "to reconsider this request in the event it bec[ame] necessary to litigate permanent custody and guardianship for [the child] or an application to modify dispositional orders [was] planned."

After this denial, the mother's aunt filed a similar motion to intervene and for immediate placement of the child with her as well as custody and guardianship of the child. She attested that she had a close relationship with the mother and even cared for her during her teenage years. In the months preceding her motions, she stated the mother "brushed [her] off." She further

attested she "had no idea that the court was involved" with the child or had "removed [the child] from [his mother's] care." She said the mother finally agreed to meet her ten months after the temporary removal order was entered and, at that time, told her she would be consenting to the termination of her parental rights and her daycare provider would be adopting the child. The mother asked her aunt to "promise not to tell her parents." The aunt did not abide by this request and informed the grandparents, who proceeded to file their motion to intervene. Not wishing to complicate matters, the aunt said she waited until their motions were resolved before filing her own. She began visiting the child shortly after learning of the mother's intentions to relinquish her parental rights. The aunt attested, "Since resuming visits with [the child], I now feel strongly he would be better off with me." She separately informed the court of the department's failure to notify family members of the child's removal from her mother.

The court granted the aunt's motion to intervene "for purposes of requesting modification of disposition and transfer of custody and guardianship." In a separate order, the court declined to consider the aunt's additional assertions concerning the statutory notice requirements.

Meanwhile, the court approved the mother's consent to terminate her parental rights and noted the issue of "whether guardianship should be placed with the relative was timely raised and preserved." The mother's aunt reasserted her request for immediate placement of the child with her, again pointing out the department's failure to comply with its statutory obligation to notify relatives. She filed a separate motion for custody and guardianship. The State resisted the motion, asserting the department "had multiple communications" with the aunt

"prior to [the child's] formal removal, and she indicated at the time that she was not able to care for [the child] due to financial constraints."

During this phase of the proceedings, the child had visits with all three relatives. The guardian ad litem noted the child was "happy and excited to spend time with his grandparents as well as [great-aunt]." The guardian ad litem was less enthusiastic about the grandparents' actions toward the daycare provider, stating they were "borderline harass[ing]" her by surveilling her home and filing reports "attacking [her] business and character." It was this surveillance that uncovered the foster parent's breaches of protocol in her provision of daycare services.

Around this time, the grandparents filed another application to intervene. They stated they "fully support[ed]" the aunt's motion to intervene but wished to be considered for immediate and adoptive placement of the child "in the event the Department believes that [the aunt] is not appropriate." They alleged the department had been "hostile to their interests and unwilling to work with them to allow them regular and ongoing contact." The State resisted the application. The State asserted "[t]he Department attempted to preserve [the child's] voluntary placement with" them before the temporary removal order was entered but the grandparents requested removal of the child. The State also cited its approval of visits between the child and grandparents.

While these intervention motions were pending, the court terminated the father's parental rights to the child. A flurry of filings followed.

The grandmother filed an affidavit attesting that the mother informed them she and the child "were no longer part of [their] family and that [they] would not

see either of them again." She further stated the mother threatened them with physical harm if they did not leave mother and child alone. And, she attested the mother was "not responsive" to attempts to reach her. Finally, she noted the department worker "never scheduled or even got back to" them about a home study after they moved to intervene, even though they gave him "his first choice of times" to conduct the study. He also failed to approve their home for overnight visits.

The grandfather attested that, when they cared for the child, the mother encouraged the child to tell authorities that the grandmother abused him so the grandmother could be "sen[t] . . . to jail." He stated he "pressed [the department] to find a solution to this situation." The department's response was to return the child to the mother. He attested the department "did not respond to repeated calls and e-mails from [him] to determine why they had directed [him] to return [the child] to an abusive environment." Like the grandmother, he further attested the mother severed her ties with them.

The juvenile court granted the motions to intervene to "fully litigate and establish permanency for the child." Following a hearing, the court denied the applications to transfer custody and guardianship and ordered custody and guardianship to remain with the department "for purposes of securing an adoptive placement." The child's great aunt and grandparents appealed.

## II.     Analysis

Both intervenors argue the juvenile court should have transferred guardianship of the child to them and, alternatively, should have modified placement to a relative. We find the first issue dispositive.

Iowa Code section 232.117(3) (2015) governs transfer of guardianship and custody of a child following termination of parental rights. The provision authorizes placement with the department, another agency, facility, or institution, or "other relative, or other suitable person." Iowa Code § 232.117(3)(c). After termination, the statute "gives no preference to any person or entity." *In re D.H.*, No. 10-1313, 2010 WL 4484849, at *4 (Iowa Ct. App. Nov. 10, 2010); *see also In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992) (stating section 232.117(3) affords "no statutory preference for a relative"). The statute also does not set forth criteria for removal of a guardian. *See D.H.*, 2010 WL 4484849, at *4 (citing sections 232.117(3) and 232.118(1)). In the absence of statutory criteria, this court has examined the reasonableness of the current guardian's actions and the best interests of the child. *See In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007) (citing absence of proof of either "unreasonable actions on the part of the Department" or failure to look out for child's "best interests").

## A.    *Reasonableness of Department Actions*

Both intervenors argue the department acted unreasonably in (1) failing to notify them of the child's removal from the mother's care, (2) failing to consider breaches of protocol in the foster parent's provision of daycare services, (3) failing to follow the court order relating to relative home studies, and (4) directing the child's therapist to enhance the bond between foster parent and child with the knowledge they were seeking custody of the child.

### 1.    *Notice*

Iowa Code section 232.84(2) states:

> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, parents of the child's siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

This "language places the onus on the department rather than the parents to identify relatives subject to notification." *In re R.B.*, 832 N.W.2d 375, 380 (Iowa 2013).

A department employee conceded the department failed to provide this notice despite its knowledge of and interaction with the three relatives during the voluntary phase of the proceedings and despite its documentation of the mother's wish to have the great aunt or grandfather serve as a placement. The department attempted to justify its omission by suggesting the relatives were aware of the proceedings. While it is clear the grandparents knew of the voluntary services the department provided when the child was in the mother's care, the department did not refute the relatives' assertions that they were unaware of the child's transfer from the mother to the daycare provider. This is the transfer that triggered the notification requirement under section 232.84(2).

But, even if the relatives were informally aware of the child's transfer to foster care, the burden remained with the department to formally notify them of the transfer. The contents of the notice are statutorily prescribed and are specific and detailed. There must be:

> a. A statement that the child has been or is being removed from the custody of the child's parent or parents.
> b. An explanation of the options the relative has under federal, state, and other law to participate in the care and placement of the child on a temporary or permanent basis

[including] assistance and support options, options for participating in legal proceedings, and any options that may be lost by failure to respond to the notice.

    c. A description of the requirements for the relative to serve as a foster family home provider or other type of care provider for the child and the additional services, training, and other support available for children receiving such care.

    d. Information concerning the option to apply for kinship guardianship assistance payments.

Iowa Code § 232.84(3). The department failed to apprise the relatives of these options.

The department's fallback position is that it would not have placed the child with the relatives even if they had received the notice and come forward because the child's daycare provider lived in Vinton and the relatives lived in Cedar Rapids. As the court stated in *In re R.B.*, this post-hoc rationalization "places the cart before the horse." 832 N.W.2d at 382. "Relative notification does not turn on whether relatives would ultimately prove to be viable placement options; notification affords the relatives an opportunity to come forward so that it can be determined whether they are viable placement options." *Id.*

In any event, the relatives testified that they would have come forward and would have attempted to pursue placement had they been apprised of the child's removal. The child's great aunt expressed shock on learning the child had been living with the daycare provider. She testified, "I just assumed if [the department] was involved that they would have contacted family, but I had not heard anything. No one had told me anything." This response was consistent with her prior experience. When she learned the department was investigating a complaint of abuse, she reported her concerns to the department. She said, "I never heard

back" and "[n]o one ever contacted me . . . to let me know that it had been dismissed or founded, nothing."

The grandfather also testified he would have come forward had he received notice. In his words, the child could have been placed with him at the time of removal "beyond a shadow of a doubt," if the department had been willing to manage his daughter's accusations against the step-grandmother, which could have jeopardized her therapist license. As noted, the department stated this was a matter between the mother and grandfather. Like the great-aunt, the grandfather attempted to communicate with the department after the child was returned to the mother. The department refused to respond to those communications.

Given the department's unresponsiveness, the relatives reasonably could have concluded additional efforts to communicate with the agency would have proved unavailing. The statutorily-prescribed notice would have clarified their options with respect to the child. The department's failure to provide the notice prejudiced their rights. Under these circumstances, we conclude the department acted unreasonably in refusing to notify the relatives of the child's removal from the mother's care.

*2. Daycare Provider*

After the juvenile court removed the child from the mother, the department placed him with the unrelated daycare provider, notwithstanding a statutory preference for placement of children with relatives during the child-in-need-of-assistance phase of the proceedings. *See* 42 U.S.C. § 671(a)(19) (requiring the State to "consider giving preference to an adult relative over a non-related

caregiver when determining a placement for a child"); *see also R.B.*, 832 N.W.2d at 381. In doing so, the department overlooked significant protocol violations in the foster mother's in-home daycare center. The foster mother conceded that three months before the guardianship hearing she had up to fifteen children in her care, with some staying overnight. Even after the department informed her that the maximum number was five, she continued to violate the rule. The department turned a blind eye to the violation.

By the time of the hearing on the relatives' motions for a change of custody and guardianship, the foster parent had time on her side. She was the person who had cared for the child for over a year and she was the person who had developed a close relationship with the department. The relationship was so close that when she asked a department employee whether she should tell the relatives of the child's transfer to her care, the employee told her "she didn't want them notified." In the employee's view, the decision whether to tell them of the change in custody rested with the mother. The department's position is refuted by the statutory notice requirement.

We conclude the department acted unreasonably in placing the child with the unrelated daycare provider without investigating the provider's daycare center and by telling the provider she need not inform the relatives of the transfer.

*3. Home Study*

The relatives contend the department should have performed home studies on their homes. We agree. As noted, relative placements are preferred over non-relative placements during the child-in-need-of-assistance phase of the

proceedings. *See* 42 U.S.C. § 671(a)(19). The juvenile court authorized the department to investigate the relatives' homes at the time of the temporary removal. No action was taken despite the department's documentation of the mother's wish to have the child placed with them. Even after the grandparents moved to intervene, the department declined to visit their home for possible placement or, indeed, for overnight visits. We conclude the department's refusal to consider the relatives as a placement option at the time of removal was unreasonable.

### 4. Therapist

The relatives contend the department authorized the child's therapist to engage in bonding therapy with the child and daycare provider. They argue this instruction was unreasonable in light of their expressed interest in adopting the child. We, too, question the department's instruction in advance of an adoption decision. To the department's credit, however, the agency later involved the relatives in the child's therapy. Accordingly, we are not persuaded the department's instruction to the therapist warrants reversal of the guardianship motions.

## B. Best Interests

The department's actions must serve the best interests of the child. *D.H.*, 2010 WL 4484849, at *6. In this case, they did not. The department declined to notify relatives who previously expressed an interest in the child, who were identified by the mother as potential placements, and who were statutorily preferred over non-relatives. The department also placed the child with a non-relative who violated protocols governing in-home daycare and the agency

informed the non-relative to refrain from telling the relatives of the child's placement. As a result, the relatives lost contact with the child for ten months. Given the relatives' active participation in the child's life prior to the removal, this disruption of contact was not in the child's best interests.

We reverse the juvenile court's denial of the relatives' motion for guardianship and custody. Because the grandparents fully supported the great-aunt's motion for guardianship and custody and viewed their motions as a standby option if the court denied her motion, we remand for entry of an order (1) directing the department to conduct a home study of the great-aunt's residence, including criminal history and child abuse checks, and (2) transferring guardianship and custody of the child to the child's great-aunt if the home study finds her suitable.

This resolution is not inconsistent with *E.G.*, 745 N.W.2d at 744. There, we reversed the district court's termination of guardianship with the department, because the "action was not based upon any proof of unreasonable actions on the part of the Department." Here, the intervenors proved unreasonable actions on the part of the department.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**