**IN THE COURT OF APPEALS OF IOWA**

No. 19-0424
Filed June 5, 2019

**IN THE INTEREST OF W.L. and E.L.,**
**Minor Children,**

**C.W. and D.C., Intervenors,**
     Appellants.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

Intervenors appeal the denial of their petition to remove the Iowa Department of Human Services as guardian of two children who were removed from their care. **AFFIRMED.**

Stephanie R. Fueger of O'Connor & Thomas, P.C., Dubuque, for appellants.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

Zeke R. McCartney of Reynolds & Kenline, Dubuque, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

This appeal raises questions about the placement of E.L. and W.L. *after* the juvenile court terminated the rights of their biological parents. Craig[1] and his husband, Dwight, challenge the denial of their motion to remove the Iowa Department of Human Services (DHS) as the children's guardian. Intervenors Craig and Dwight argue the DHS acted unreasonably and not in the children's best interests by removing the children from their care over concerns about inadequate supervision. The juvenile court agreed the DHS acted unreasonably but decided disrupting the children's current pre-adoptive placement was not in their best interests. After giving the record fresh consideration,[2] we affirm.

**I.      Facts and Prior Proceedings**

The children involved in this appeal are E.L., born in 2014, and W.L., born in 2015. Their parents' drug use and incarceration led to DHS removing the children from their home. After a brief placement with their paternal grandmother, the children moved in with relatives, Craig and Dwight, who are also licensed foster parents, in December 2017. The couple also cared for another set of three siblings, who were cousins to E.L. and W.L. In addition, Craig's ten-year-old biological daughter, K.W., lived with them—making it a household with six children.

Craig and Dwight run a dairy farm. Dwight handles most of the farm operation, and Craig concentrates on the home—cooking, cleaning, and caring for the children. The couple planned to adopt all the children in their care.

---

[1] Craig is the cousin of E.L. and W.L.'s biological father.
[2] We review this child-welfare case de novo. *See In re E.G.*, 745 N.W.2d 741, 743 (Iowa Ct. App. 2007). We consider the facts and adjudicate rights anew. *Id.* We give weight to the juvenile court's findings of fact but are not bound by them. *Id.*

In April 2018, the juvenile court terminated the rights of the biological parents of W.L. and E.L. and appointed the DHS as the children's guardian. Placement with Craig and Dwight continued, but the DHS did not move to appoint the couple as guardians. Before this time, everyone involved in the child-welfare case reported E.L. and W.L. were doing well Craig and Dwight's care.

Trouble arose in June 2018 when Cheri Alun, a provider of Behavioral Health Intervention Services, visited the residence and observed the children, including K.W., seemingly unsupervised in the yard. She saw one older child running a trimmer and another mowing with a lawn tractor; both children were around nine or ten years old. Three younger children were nearby. In search of an adult, Alun knocked on the front door and received no response; she went to the back door and also received no response. When she returned to the front door, Craig answered. He had not been able to immediately answer the door because he was upstairs helping another child, who was sick. Alun estimated the response took about five minutes.

After that incident, the DHS removed all five foster children[3] from the home, citing a lack of proper supervision. The DHS placed the children temporarily with a foster family, then with their paternal uncle, Joe, and his wife, Kristen. The children have since remained in that home.

The DHS investigated and returned a founded child-abuse assessment against Craig and Dwight for failure to properly supervise W.L. and E.L. The DHS also revoked their foster parenting license. Craig and Dwight received notice of

---

[3] K.W. remained in the care of her father.

the child-abuse assessment and their placement on the central abuse registry in July 2018. In September, Craig and Dwight filed a motion to remove DHS as the children's guardian; the court set that motion for a hearing in November. Then, in November, Craig and Dwight filed a motion to reverse and expunge the child-abuse assessments.[4] The hearing was continued until January 2019.

In February 2018, the court concluded the child-abuse assessments should be changed to unfounded and expunged them from the registry. The court also found significant flaws in the investigation and determined the DHS acted unreasonably when it removed the children.

But the juvenile court refused to remove DHS as the guardian. Given the instability experienced by the children throughout the proceedings, the court believed it was contrary to their welfare to disrupt their current placement with Joe

---

[4] At trial, the guardian ad litem and State challenged Craig and Dwight's ability to request expungement in the juvenile court rather than through administrative proceedings under Iowa Code section 235A.19. Interpreting Iowa Code section 235A.18(2), and a court of appeals case, *In re A.J.*, 821 N.W.2d 280 (Iowa Ct. App. 2012), the court determined they did have standing to request an expungement. Iowa Code section 235A.18(2) provides: "Child abuse information relating to a particular case of child abuse placed in the central registry that a juvenile or district court determines is unfounded in a written finding based upon a preponderance of evidence shall be expunged from the central registry." In *A.J.*, we acknowledged the juvenile court has discretion during a CINA proceeding to determine whether a child abuse report is unfounded "when the issue is raised by the parents . . . ." 821 N.W.2d at 284. Here, the juvenile court extended that concept to caregivers, other than parents, who are the subject of an erroneous report, finding the decision whether to hold a hearing was within the court's discretion. Craig and Dwight initiated an administrative action, but a hearing could not be held until summer 2019; they argued staying the placement proceedings until the conclusion of the administrative appeal process was not in the children's best interests. The court agreed and, in the interest of speedily establishing permanency, set the application on expungement for hearing. On appeal, neither party relitigates this issue.

and Kristen, who intend to adopt them.[5]  Craig and Dwight appeal the denial of their request to remove DHS as the guardian.[6]

## II.    Analysis

Iowa Code section 232.117(3) governs guardianship and custody arrangements after termination of parental rights.  The provision directs the juvenile court to transfer children's guardianship and custody to one of the following: (1) the DHS; (2) a placement agency or other suitable entity licensed to provide care; or (3) a parent who does not have physical care, other relative, or other suitable person.  Iowa Code § 232.117(3).  This post-termination statute gives "no preference to any person or entity."  *In re N.V.*, 877 N.W.2d 146, 150 (Iowa Ct. App. 2016).  A court-appointed guardian may be removed upon a petition by "an interested party or upon the court's own motion."[7]  Iowa Code § 232.118(1).

Neither section 232.117 nor section 232.118 offer criteria for removing a guardian.  *See In re D.H.*, No. 10-1313, 2010 WL 4484849, at *4 (Iowa Ct. App. Nov. 10, 2010).  But, "[i]n the absence of statutory criteria, this court has examined the reasonableness of the current guardian's actions and the best interests of the

---

[5] Craig and Dwight also filed a motion to amend and enlarge, which the court largely granted, consisting mostly of amendments and corrections to the facts in the original ruling.

[6] The State contests error preservation of Craig and Dwight's argument the current placement is not in the children's best interests.  The State contends the juvenile court did not make specific findings about the current placement, only stating it was not removing the DHS as guardian because disrupting the placement would be contrary to the children's best interests.  But the court also found, "The DHS adoption specialist, Betty Kilburg, testified that the current relative placement is meeting the children's basic needs."  Craig and Dwight preserved the issue.

[7] The State does not contest Craig or Dwight's "interest," even though they are not the parents and have never had guardianship over the children.

child."[8]  *N.V.*, 877 N.W.2d at 150.  In determining if the DHS acted unreasonably, we consider "whether '[the [DHS] in any way failed in its guardianship duties or in looking out for [the children's] best interests.'"  *In re T.J.M.*, No. 18-1390, 2018 WL 5840806, at *3 (Iowa Ct. App. Nov. 7, 2018) (quoting *In re E.G.*, 745 N.W.2d 741, 744 (Iowa 2007)).  Even if the DHS acted unreasonably in discharging its guardianship duties, we will not automatically remove the DHS as guardian under section 232.118 if such removal is not in the children's best interests.  *See A.V.*, 2017 WL 104974, at *2.

Craig and Dwight agree with the juvenile court's determination the DHS acted unreasonably in a number of ways, but they believe it should have taken the next step and removed the DHS as guardian of W.L. and E.L.  The intervenors assert the children's best interests would be served by removing the DHS as guardian and transferring guardianship to them.  The State responds, even if the DHS acted unreasonably, the children's best interests demand retaining the DHS as their guardian.

The juvenile court found the DHS "acted unreasonably when it removed the children based on a child protective assessment that was not thoroughly investigated and appears to have been improperly influenced."  Specifically, the court was concerned Craig and Dwight received no notice of any parenting

---

[8] In *D.H.*, 2010 WL 4484849, at *3, *7, our court also looked for a substantial change in circumstances.  But since that case, we have not consistently considered that third factor in applications for removal of a guardian.  *See, e.g.*, *In re A.P.*, No. 18-0228, 2018 WL 2727826, at *1 (Iowa Ct. App. June 6, 2018); *In re A.V.*, No. 16-1749, 2017 WL 104974, at *1–2 (Iowa Ct. App. Jan. 11, 2017); *N.V.*, 877 N.W.2d at 150; *In re R.S.*, No. 15-1244, 2015 WL 5578273, at *2–3 (Iowa Ct. App. Sept. 23, 2015); *but see, e.g.*, *In re X.O.*, No. 16-0313, 2016 WL 27434445, at *2 (Iowa Ct. App. May 11, 2016); *In re I.G.M.*, No. 13-1185, 2013 WL 5949627, at *2–4 (Iowa Ct. App. Nov. 6, 2013).

concerns or any opportunity to correct them; the investigator did not interview caseworker Angi Becker, adoption specialist Betty Kilburg, or former service provider Anthony Franklin. And the DHS did not seek input from the children's guardian ad litem. Informal emails between various DHS workers dangled the baseless suggestion Craig and Dwight were untrustworthy and financially motivated. It appeared to the court that "a simple meeting" with the intervenors to "go over supervision expectations could have prevented removal."

But the court found removing the DHS as guardian was not in the children's best interests. It noted the children were only three and four years old, yet "their lives have been plagued by instability and disrupted placements." At that point, the children had not had contact with Craig and Dwight for nine months. According to Kilburg, the current placement was meeting the children's basic needs: "No evidence was presented to the Court establishing that yet another removal would be in the children's best interests. The children deserve stability and consistency[,] which is long overdue. As such, the Court does not believe another disrupted placement would serve the children's best interests."

The State does not appeal the unreasonableness finding, but we agree with the juvenile court on the separate best-interest prong. As the record stands, we must focus on the children's welfare at the time of the hearing on the intervenors' petition to remove the DHS as guardian. This time-sensitive focus is consistent with the overarching goal of chapter 232 to seek the best interests of the child. *See* Iowa Code § 232.1 (directing courts to liberally construe chapter to "best serve the child's welfare").

In October 2018, the DHS reported moving forward with steps necessary for Joe and Kristen to adopt the children. E.L. is in preschool, and W.L. is in daycare. Kristen said E.L. is bonded with her biological daughter. The children are healthy, happy, and well-adjusted to their new routines. Kristen notes W.L. expresses some anxiety about the uncertainty of their future—as an example, he needs reassurance Kristen will pick him up at the end of the school day. Neither child requires special services or exhibits troubling behaviors. Early in the placement, the DHS had concerns about the couple's financial stability, but the home is safe and appropriate for E.L. and W.L.

We cannot travel back in time and undo an imprudent decision by the DHS to remove the children from worthy caregivers. We can only assess what is in the best interests of the children now. Although the juvenile court found the DHS acted unreasonably by removing the children from Craig and Dwight, we see no evidence the DHS failed to act in the children's best interest by placing them with Joe and Kristen.

Furthermore, Craig and Dwight overlook the fact that removing the DHS as guardian does not necessarily mean they would be appointed as replacement guardians. The intervenors do not have a greater claim than the current foster parents, even if the children were once in their care. *See R.S.*, 2015 WL 5578273, at *1 (recognizing no requirement that DHS make "reasonable efforts to preserve a pre-adoptive foster care placement following removal of the child from placement"); *see also E.G.,* 745 N.W.2d at 744 ("The foster care system is designed to provide temporary, not permanent, homes for children. This is to facilitate the goals of reunification with the parents or placement in a relative's

home.  We certainly recognize the bond that is developed between a foster parent and child.  However, if every foster parent who formed a bond with a child were given enforceable rights to the children, it would upset the goals of the system.").

The children are doing well in the care of Joe and Kristen, who plan to adopt them.  W.L.'s lingering anxiety about the future highlights their hunger for a permanent home after so many removals and different placements.  The children lived with Craig and Dwight for about six months then had no contact for the next nine months.  More upheaval will be detrimental to the children.  We agree with the juvenile court and decline to remove the DHS as guardians.

**AFFIRMED.**