# IN THE COURT OF APPEALS OF IOWA

No. 23-1511
Filed January 10, 2024

**IN THE INTEREST OF L.S.,**
**Minor Child,**

**K.N. and Z.P., Intervenors,**
    Appellants.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

Intervenors appeal the juvenile court's denial of their motion to modify placement. **AFFIRMED.**

Erin E. Jordan of Hope Law Firm & Associates, P.C., West Des Moines, for appellants.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Jane White of Gribble, Boles, Stewart & Witosky Law, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

The importance of sibling relationships is emphasized by statute and case law.  *See In re I.P.*, No. 19-0715, 2019 WL 3317922, at *4 (Iowa Ct. App. July 24, 2019); *see also* Iowa Code § 232.108 (2023).  But does the importance given to that relationship mean the Iowa Department of Health and Human Services acts unreasonably and irresponsibly when it fails to place a child with the adoptive parents of a half-sibling?  Because of the deference given to the department's decision for placement of a child, and the overriding concern for the child's best interests, we conclude the answer to that question is no.  We accordingly affirm the juvenile court's dispositional order denying the intervenors' motion to modify placement.

**I.      Background Facts and Proceedings**

L.S. was born in November 2022.  He has two older half-siblings, whose parents' rights were terminated in 2019 and 2021.  One of L.S.'s siblings was adopted by the mother's sister and her husband.  The other, T.P.,[1] was adopted in May 2022 by Katie and Zachary—the intervenors in this proceeding.

While their adoption of T.P. was pending, Katie and Zachary learned the mother was expecting another child.  They told the department caseworker who had been involved in their case that they were interested in caring for that child if the child was removed from the parents' care.  That worker encouraged Katie and Zachary to renew their foster care license because she believed a juvenile court case would likely be opened for the infant.

---

[1] This is the child whose parents' rights were terminated in December 2021.

But two weeks after L.S. was born, the department conducted an assessment and determined court involvement was unnecessary because the child was "born negative for all illegal substances, the parents [were] sober for [a] period of one year, and mom [was] working with services providers addressing her mental health concerns." Unfortunately, the parents' sobriety did not last.

In March 2023, the department applied for temporary removal of the child because of parental substance abuse. Rather than placing L.S. with Katie and Zachary, the department elected to place him with a paternal aunt and uncle, Carmen and Jose, who had "cared for him on a consistent basis" before the removal. The department found these relatives were suitable through a search of the child abuse registry and a criminal records search, although the latter showed that Jose had an operating-while-intoxicated conviction in 2021.[2]

The juvenile court's March 3 removal order placed the child in the temporary custody of the department "for placement with an adult relative of the child including but not limited to adult siblings and parents of siblings." The court ordered the department to comply with the relative-notice requirements of Iowa Code section 232.84(2), which includes "parents of the child's siblings." The order also noted the department "may share information as necessary to explore a child's potential placement with any adult relative who may receive notice pursuant to subsection 2." *See* Iowa Code § 232.84(4). The court confirmed the removal and relative placement in a later order after a formal hearing.

---

[2] The document attached to the removal affidavit from Iowa Courts Online shows this was originally charged as a second offense, but the ultimate conviction was for a first offense.

Even though they had been in contact with the department before L.S. was born, Katie and Zachary did not learn about his removal until the beginning of April when they received the relative notice from the department. On April 11, they filed a "motion to intervene and request for placement of the child" in their home with his biological brother. Their motion noted they "are committed to maintaining family relationships between the minor children and other relatives, and have maintained contact with" the third sibling. The child's guardian ad litem did not resist intervention, agreeing the intervenors have "an excellent and safe home" and should be considered a concurrent option. But she did not believe changing the child's placement would be in his best interests given the care the paternal aunt provided to the child, even before the proceedings.

Following the guardian ad litem's report, and later withdrawal due to a conflict of interest, a combined hearing on adjudication, intervention, and disposition was set for June 1. Two days before the hearing, the intervenors filed a "motion for temporary placement pursuant to [section] 232.78(8) and continuance of disposition." In that motion, they asked the court to review the department's initial placement decision, asserting "the department failed to act in [L.S.]'s best interests by unreasonably failing to consider Katie and Zack for temporary placement under [section] 232.78(8) when [L.S.] was removed." As the sibling's adoptive parents, the intervenors argued they were adult relatives with superior priority for placement over the paternal relatives. The intervenors also complained that the department "made no efforts whatsoever to place" the child with them, "despite being notified immediately that Katie and Zack would be happy to provide a temporary placement," nor did it facilitate visits between the siblings.

After the hearing,[3] the court adjudicated the child as in need of assistance, granted the motion to intervene, continued disposition, and ordered that the child remain in relative placement pending disposition.

At the dispositional hearing on July 24, Katie testified that the child and his half-sibling should be raised together. She contended that the department did not properly consider her and Zachary as a potential placement either before or after removal, nor did it facilitate sibling contact. Katie testified she was "absolutely shocked" when she learned of the child's removal from the relative notice since she had been in contact with the department before then. Katie immediately contacted the caseworker assigned to L.S.—JoAnna Demaria. She testified that Demaria seemed confused about the sibling relationships and incorrectly told her on two occasions that she could not discuss the case without parental releases.

Despite Katie's repeated requests for placement and physical contact with L.S., she said that Demaria took no action until a short home visit on May 30, where she sat on a chair in Katie's living room for fifteen or twenty minutes and asked questions for her social history report:

> She didn't look around my house. She didn't look for sleeping arrangements, baby equipment. It did not seem to be a vetting. It was, she was preparing a social history and so she was asking me factual information. It was not really for the purpose of exploring placement or there was no discussion of, you know, why I would be qualified to take placement.

Fed up, Katie emailed Demaria's supervisor in mid-June. That exchange was followed by a staffing on June 22, at which Katie said the department "appeared to be very against the two siblings initiating contact" because "they were

---

[3] We have no transcript for the June 1 hearing.

fearful of creating a bond and severing a bond." The department begrudgingly, according to Katie, authorized a one-hour sibling visit once each month, the first of which occurred on June 23 and was semi-supervised. Katie said she asked for more visitation, but her request was denied. James, the adoptive father of the child's other half-sibling, testified he contacted the department after receiving a relative notice, but he was also not investigated as a potential placement. The department caseworker did not testify at the hearing.

At the close of evidence, the court allowed the parties to file written closing arguments on the placement issue. The mother objected to modifying the child's placement, arguing the intervenors failed to show the initial placement decision was unreasonable or irresponsible. The State echoed the mother's arguments and noted the child's "placement with his paternal aunt and uncle is also providing him with a cultural connection to his Hispanic heritage and his father's side of the family." And in a report filed before the hearing, the guardian ad litem stated that moving the child away from Carmen, who had cared for the child since before his removal, was not in his best interests.

In their written closing argument, the intervenors argued the department's placement decision was unreasonable or irresponsible because (1) they had statutory priority over the current placement; (2) placement with them would be less restrictive; (3) the department violated its own policies by failing to vet the current placement for criminal history and substance abuse,[4] failing to investigate

---

[4] In support of this ground, the intervenors factually argued (for the first time) that the paternal uncle had two prior operating-while-intoxicated convictions, and the "record is devoid of any evidence that the [department] commenced any investigation regarding [his] history of substance abuse."

the intervenors as a potential placement, and failing to place the child with a sibling; and (4) the department advocated against the stated public policy of keeping siblings together.

In its dispositional order, the juvenile court declined to modify placement, concluding the intervenors did not "meet their burden to show the department failed to act in the child's best interest by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child in interest." While the court acknowledged a preference to place siblings together, it observed that preference is not absolute. The court also observed the child was in a relative placement that the department found was appropriate and safe; the child was more familiar with those relatives; and placement with the "paternal relative also preserves the father's heritage." Though the court agreed the department "admittedly at times did not follow its own policies and procedures, their failure to do so does not amount to a lack in providing for the child's best interest nor calls for a remedy of the child's change in placement." Finally, the court ordered that the case permanency plan "developed by the Department and the child's parents, filed herein is hereby adopted and incorporated hereto as if set forth in full herein, [and] shall be complied with by all parties."

The intervenors appeal, claiming (1) the court erred in denying their motion to modify placement, (2) race and national origin were impermissible placement considerations, and (3) the court improperly adopted a "non-existent" case permanency plan.[5]

---

[5] In their petition on appeal, the intervenors state that all the arguments raised in their thirty-page written closing argument in the juvenile court "should be

## II.    Standard of Review

Child-in-need-of-assistance proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). The juvenile court's factual findings are given weight, although they are not binding. *Id.* The child's best interests are the primary concern. *Id.*

## III.    Analysis

### A.    Motion to Modify Placement

Once the child was placed in the department's legal custody upon removal, physical placement of the child was within the department's discretion, subject only to the juvenile court's review. *See* Iowa Code § 232.2(12)(b); *In re L.A.*, No. 18-2200, 2019 WL 719057, at *1 (Iowa Ct. App. Feb. 20, 2019); *In re L.B.*, No. 18-1165, 2018 WL 4361066, at *2 (Iowa Ct. App. Sept. 12, 2018). At all times between removal and disposition,

> [t]he court shall give deference to the department's decision for placement of a child. A party opposed to the department's placement of a child shall have the burden to prove the department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child.

Iowa Code §§ 232.78(8)(b)(2) (ex parte removal), .95(6)(a)(2) (continued removal), .96(11)(b) (adjudication), .102(1)(b)(2) (disposition).

In other words, the burden is on the intervenors to show the department acted unreasonably or irresponsibly and contrary to the child's best interests in

---

incorporated by reference." While the new rules of appellate procedure have not yet taken effect—one of which provides that "[n]o authorities or argument may be incorporated into the brief by reference to another document" (new rule 6.903(2)(a)(8)(3))—random mention of an issue will still not prompt appellate review. *See Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 697 (Iowa 1994).

selecting a placement. *Cf. In re J.L.*, 973 N.W.2d 895, 908 (Iowa Ct. App. 2022) (noting decision of whether to remove department as guardian for unreasonable or irresponsible discharge of duties "must focus on the process [the department] used and the actions it took in reaching the placement decision and then determine whether those were unreasonable (or irresponsibly undertaken)—all with the best interests of the child in mind"). We agree with the juvenile court that the intervenors failed to meet that burden.

The intervenors primarily argue the juvenile court erred in concluding the department did not act unreasonably and irresponsibly by refusing to follow sibling-preference mandates provided by statute, regulation, caselaw, and department policy. According to the intervenors, their status as the parents of the child's sibling gives them placement priority. Thus, they contend the department was unreasonable and irresponsible in not placing the child with them.

To begin, the applicable statutes initially place the intervenors and the current placement on equal footing as "adult relative[s] of the child including but not limited to adult siblings and parents of siblings." *See* Iowa Code §§ 232.78(8)(a)(1), .95(2)(c)(1), .102(1)(a)(1); *see also id.* § 232.96(11)(a). Assuming without deciding that the sibling-preference statute—section 232.108(1)[6]—gives the intervenors a bump in priority, the juvenile court correctly

___

[6] Section 232.108(1) provides:

> If the court orders the transfer of custody of a child and siblings to the department or other agency for placement under this chapter, the department or other agency shall make reasonable efforts to place the child and siblings together whenever possible if such placement is in the best interests of each child. The requirement of this subsection remains applicable to custody transfer orders made at separate times provided the requirement will not jeopardize the

observed the sibling preference is not absolute. Whether it stems from statute, regulation, policy, or jurisprudence, the preference always gives way to the best interests of the child. *See* Iowa Code § 232.108(1) (conditioning preference for sibling placement on the best interests of each child); *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) ("We have previously stated a preference to keep siblings together. However, this preference is not absolute. Our ultimate concern is the best interests of the child."); *see also In re J.T.*, No. 23-1290, 2023 WL 7015734, at *4 n.4 (Iowa Ct. App. Oct. 25, 2023) (discussing recently enacted statutory "priority preferences for purposes of guardianship and custody" and noting, "[d]espite that priority assignment, a child's best interests may override a familial preference"). By relying almost solely on the sibling relationship, the intervenors miss that key consideration—what is in the best interests of *this* child?

Here, the juvenile court found the child's current placement was in his best interests:

> The Department continues to have a duty to provide reasonable efforts to the parents for reunification and given such, determined that it was in the child's best interest to have the child placed in the Department's custody for purposes of relative foster care, with paternal relatives. . . . This Court finds placing the child with a paternal relative, that the Department deemed to be appropriate and safe, was in the child's best interest to preserve the family connections where there had been interactions prior to removal and the child was familiar with the paternal relatives, and where there had not been any ongoing contact with a half-sibling in the Intervenor[s'] care.

---

stability of placements and is in the best interests of each child. *The requirement of this subsection also applies in addition to efforts made to place the child with an adult relative.*
(Emphasis added.)

Citing our decision in *In re J.B.*, the intervenors argue it was the department's own fault that they did not have a relationship with the child, so the department cannot now justify its placement decision based on the child's relationship with the paternal relatives. No. 18-1177, 2018 WL 4362753, at *3 (Iowa Ct. App. Sept. 12, 2018) ("But the department's only best-interests argument was premised on the bond the two siblings developed with their foster parents, which was an issue of the department's own making. Department personnel had the opportunity to place all three children in the intervenors' home when the children were first removed. They chose not to."). But unlike the three siblings in *J.B.*, who were removed at the same time and placed in different foster homes, the siblings here never lived together or had contact before L.S.'s removal from his parents' care. *Id.* at *2–3. Perhaps more importantly, the foster parents in *J.B.* had no relationship with the children pre-removal while here, the relative placement did. And that was the reasoning behind the department's decision to utilize the paternal relative placement from the start, which we do not find was unreasonable or irresponsible.

The intervenors also rely on the department's failure to follow factors in its policy manual,[7] which is not in the record before us, "for determining placement in L.S.'s best interest." Those factors include the child's "need for appropriate and stable educational setting, the ability of the placement resource to sustain the

---

[7] At the end of the dispositional hearing, the court declined to admit the exhibits the intervenors filed the day before as untimely. Those exhibits included the entire department policy manual. While the intervenors suggest this was improper, they do not raise the issue as one of their specific assignments of error, so we do not discuss it further.

placement, the success of the placement resource in serving children with similar needs, expected length of placement or the cost of the placement and availability of funding for the placement." But beyond the intervenors' successful adoption of L.S.'s brother, there was no evidence about any of these factors for either placement option or the department's investigation of these factors. Indeed, when asked at the hearing whether Carmen was an appropriate placement, Katie responded: "I don't have any information firsthand to know if she is or is not."

Yet on appeal, the intervenors argue Carmen was not an appropriate placement[8] because of her husband Jose's two operating-while-intoxicated convictions. Relying solely on the criminal-history attachment to the removal application, they speculate that the department only knew about one of those convictions and did not assess whether he had a problem with substance abuse. Like with the policy manual violations, no evidence was presented to show that the department was unaware of Jose's criminal history, that it did not thoroughly vet him about this history, or that he has a substance-abuse problem.

In any event, this is not a custody battle between two competing parties. *See J.L.*, 973 N.W.2d at 907. "Once the juvenile court selected [the department]

---

[8] In their petition on appeal, the intervenors complain the juvenile court thought only Carmen and not Jose was the placement. But Katie agreed with that in her testimony. And the remaining record shows the child was placed with Carmen as the responsible party, although it is assumed Jose also lives in the home.

In a similar vein, the intervenors complain that the juvenile court didn't have much to say about Zachary and "improperly discussed the 'Intervenor' and referenced the party as 'she.'" The implication seems to be that the court didn't consider Zachary to be an intervenor, even though the court granted intervention by both. References to Katie were likely because she took the reins in providing the substantive testimony and engaging with the department. Zachary provided only corroborative testimony at the hearing.

to serve as the child's custodian, it was not the juvenile court's place to select the particular physical placement of the child." *L.A.*, 2019 WL 719057, at *1 (citation omitted). Instead, as the child's custodian, the department "was vested with the authority to select the particular foster care placement subject to the juvenile court's review." *Id.* (citation omitted). And we must give deference to that decision. *See* Iowa Code §§ 232.78(8)(b)(2), .95(6)(a)(2), .102(1)(b)(2); *see also id.* § 232.96(11)(b).

It is that statutorily mandated deference—and the child's best interests—that guide our decision to affirm the juvenile court's denial of the intervenors' motion to modify placement. While the department may have made some mistakes in its communication with the intervenors, that does not equate to a failure to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child. *Cf. In re N.V.*, 877 N.W.2d 146, 151–53 (Iowa Ct. App. 2016) (finding intervenors, who had an established relationship with the child, met their burden to prove the department acted unreasonably by failing to notify them of the child's removal, consider breaches of protocol in the foster parent's provision of daycare services, and follow the court order for relative home studies). Because there is no affirmative evidence in the record to support a finding that the placement is not suitable or is contrary to the child's best interests, we affirm the juvenile court's denial of the intervenors' motion for modification of placement.

### B. Propriety of Placement Considerations

The intervenors next argue "[t]he court and the department impermissibly relied upon race and national origin as factors in determining L.S.'s placement,

which violates federal law and department policy." Their argument comes from passing references to "heritage" in the county attorney's written closing argument and the court's ruling. Because the intervenors raised this argument for the first time on appeal, they did not preserve error for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

### C. Permanency Plan

Lastly, the intervenors argue "[t]he court improperly adopted [the department's non-existent 'permanency plan.'" As the State points out, the department's dispositional and social investigation reports equated to a case permanency plan, which the court adopted in its dispositional order. *See* Iowa Code § 232.2(4) (defining case permanency plan). The intervenors, who were indexed on the case, had access to these documents and did not register any complaints about their sufficiency, other than Katie's suggestion in her testimony that they contained factual inaccuracies. We accordingly reject this claim as well.

### IV. Conclusion

On our de novo review of the record, we find the intervenors did not meet their burden to prove that the department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child. As a result, we affirm the juvenile court's denial of their motion to modify placement and reject their ancillary claims.

**AFFIRMED.**