# IN THE COURT OF APPEALS OF IOWA

No. 24-1213
Filed December 4, 2024

**IN THE INTERST OF A.W.,**
**Minor Child,**

**STATE OF IOWA,**
        **Appellant.**
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, Judge.

The State appeals the juvenile court's order removing the Iowa Department of Health and Human Services as guardian. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellant State.

Amanda Heims, Council Bluffs, for appellee.

Considered by Schumacher, P.J., and Ahlers and Chicchelly, JJ.

**CHICCHELLY, Judge.**

The State appeals the juvenile court's order removing the Iowa Department of Health and Human Services[1] as guardian. Upon our review, we reverse and remand with instructions to reappoint the department as guardian of the child.

## I.   *Background Facts and Proceedings.*

The department became involved with A.W. at birth after her umbilical cord tested positive for amphetamine and methamphetamine. When A.W. was just three days old, the department placed her with foster parents. A.W. continuously remained in their care for almost two years throughout the termination-of-parental-rights and post-termination proceedings.

Because A.W.'s biological mother was a member of the Winnebago Tribe of Nebraska, the State inquired about A.W.'s eligibility for tribal membership. Both the Winnebago and Omaha Tribes determined A.W. was not eligible for enrollment.[2] Based on her ineligibility to obtain tribal membership, the juvenile court determined that the Indian Child Welfare Act (ICWA) was inapplicable to A.W.'s case. *See* 25 U.S. §§ 1901–1963 (establishing general guidelines for Indian children in child welfare cases); Iowa Code §§ 232.7 (2022) (stating ICWA is applicable to proceedings involving an "Indian child"), 232B.3(5) (defining an

---

[1] In 2022, the legislature merged the Iowa Department of Human Services and the Iowa Department of Public Health to create the Iowa Department of Health and Human Services. Because this change occurred during the life of this case, for continuity, we refer only to the department generally.

[2] The Omaha Tribe stated A.W. may be eligible for future membership based on the father's status once paternity is established. But at the time of the inquiry, the legal father was still the biological mother's husband, and he did not claim any Native American heritage. Paternity was never established, and the State made no additional inquiries.

"Indian" child as one who "is eligible for membership in an Indian tribe"). Proceedings continued without regard for ICWA, although notice was still provided to both tribes.

At some point, the department discovered that A.W. had several siblings, including K.C. K.C.'s adoptive mother had expressed interest in serving as a pre-adoptive placement for A.W., but the record is unclear on when this occurred.[3] Regardless of when the department learned of K.C.'s existence, it did not bring her to the court's attention as statutorily required until the termination hearing in July 2023. *See* Iowa Code § 232.84 (requiring "adult relatives" including "parents of the child's siblings" to be notified when a child has been removed). The foster mother also testified that the department called her just hours before the hearing to tell her about K.C. and her mother's interest in placement.

Approximately one year after A.W.'s birth, the juvenile court terminated the parental rights of the biological mother and any putative fathers. It also appointed the department as guardian "for pre-adoptive placement." While the department encouraged sibling visits between A.W. and K.C., it initiated only one contact between them. Meanwhile, both the biological mother and legal father appealed, and we affirmed termination of their respective parental rights. *In re A.W.*, No. 23-1125, 2023 WL 6290680, at *3 (Iowa Ct. App. Sept. 27, 2023).

---

[3] A.W.'s family-centered services provider testified she learned about K.C. in July 2022 and soon after relayed that information to the department. The department's own case notes from September 29, 2022, included K.C.'s mother's name and phone number. But the department case worker testified they did not become aware of K.C. until much later, in March 2023.

K.C.'s mother and the foster parents separately intervened, each expressing willingness to adopt A.W. The department held a multi-family adoption staffing on February 20, 2024, and the staffing committee was tasked with choosing between either K.C.'s mother or the foster parents as pre-adoptive placement. Because the committee, which is comprised of several department employees, generally does not have contact with the children or placement options, it relies on interviews, reports, and recommendations from those involved in the underlying termination. Both A.W.'s guardian ad litem and her social worker recommended she be placed with her foster parents. But the committee selected K.C.'s mother. A.W.'s adoption specialist testified that the committee relied heavily on K.C.'s mother being a "relative" to A.W., her willingness to maintain A.W.'s Native American heritage, and her experience as a healthcare provider.

After the committee decision, the foster parents sought to remove the department as guardian, alleging it acted against A.W.'s best interests by removing her from their care. A.W.'s guardian ad litem joined the motion. Both the State and K.C.'s mother resisted. After a four-day hearing, which was held over a three-month period, the court found the department acted unreasonably and irresponsibly in its capacity as guardian. It removed the department and appointed the foster parents as replacement guardians. The State appeals.

## II. Review.

We "review the evidence de novo to determine whether the juvenile court abused [its] discretion" in determining whether to remove a guardian. *See In re K.D.*, 975 N.W.2d 310, 319 (Iowa 2022). "An abuse of discretion occurs when the juvenile court bases its decisions on grounds or reasons clearly untenable or to an

extent that is clearly unreasonable or if it bases its conclusions on an erroneous application of law." *Id.* (cleaned up).

### III.    Discussion.

The juvenile court is permitted to remove a guardian that "failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge the guardian's duties in finding a suitable adoptive home for the child." Iowa Code § 232.118(1)(a). The burden is on the moving party to establish this alleged failure. *See id.* § 232.118(2)(a). "We do not treat this request for the removal of [the department] as guardian as a custody battle . . . ." *K.D.*, 975 N.W.2d at 320. Instead, "[t]he court shall give deference to the decision of the guardian." Iowa Code § 232.118(1)(b). We will only remove a guardian when: "(1) the current guardian's actions were unreasonable or irresponsible; and (2) the current guardian's actions did not serve the children's best interests." *K.D.*, 975 N.W.2d at 320. Because the guardian here is the department, we consider its "actions it took in reaching the placement decision and then determine whether those were unreasonable (or irresponsibly undertaken)—all with the best interests of the child in mind." *Id.* (citation omitted). We begin by considering the department's alleged actions, which the court found unreasonable and irresponsible.

### A. Specific Actions by the Department.

The State focuses its argument on several of the department's alleged failures: (1) to provide sibling visitation; (2) the court's finding that K.C.'s mother was not a "relative" to A.W.; (3) the court's prioritization of foster parents; (4) the court's finding that race was improperly considered; and (5) the court's consideration of certain evidence. We consider each argument in turn.

### 1. *Alleged Failure to Provide Sibling Visitation.*

The State first argues that the court abused its discretion in finding that the department failed to provide sibling visitation. The department is required to either place siblings together when possible or, in the alternative, "provide for visitation or other ongoing interaction between the child and the child's siblings" from removal to reunification or permanency. Iowa Code § 232.108(1)–(2); *In re C.D.*, No. 18-0044, 2018 WL 1863290, at *5 (Iowa Ct. App. Apr. 18, 2018) (recognizing the department's requirement "to make reasonable efforts" in regard to sibling contact). The court found that the department failed to provide consistent sibling visitation "to the detriment [*sic*] of this child." But upon our de novo review of the record, we disagree. Whether the department made reasonable efforts to provide sibling visitation during the reunification period does not speak to the suitability of the pre-adoptive placement decision. Instead, reasonable-efforts challenges are best saved for contesting termination-of-parental-rights. *See C.D.*, 2018 WL 1863290, at *5 (finding that the reasonable-efforts requirement "impacts the burden of proving those elements of termination" (citation omitted)). We therefore find that any alleged failure or shortcomings by the department relative to the provision of sibling visitation do not impact our ultimate determination that the department was neither unreasonable nor irresponsible in choosing a suitable pre-adoptive home for the child.

## 2. Interpretation of "Relative" Definition.

Next, the State contends that the court should have determined that K.C.'s mother was a "relative" as defined by statute.[4]  *See* Iowa Code § 232.2(56) (defining "relative"); *In re J.L.*, 973 N.W.2d 895, 908 (Iowa Ct. App. 2022) (finding the Iowa Administrative Code requires the department to prioritize relative placements).  The parties do not dispute that A.W. and K.C. are related.  Where they differ is if A.W. and K.C.'s relation extends to K.C.'s mother through adoption.  The State contends that her adoption of K.C. "creates a relationship akin to that of a biological relative."[5]

Upon our own review of applicable statutes, we agree that K.C.'s mother is a "relative" for the purposes of placement priority.  The Iowa legislature expanded the definition of "relative" to include any "individual related to a child within the fourth degree of consanguinity or affinity, by marriage, or through adoption."  *See* 2022 Iowa Acts ch. 1098 § 13 (codified at Iowa Code § 232.2(46A) (2022)).  The statute clearly provides for relation "through adoption," not just through biological means.  *See* Iowa Code § 232.2(46A).  And we have similarly held that we do not

---

[4] While neither party addresses it, we do note that while the department alleges that K.W.'s mother is a "relative," she was never provided a relative notice as required by statute.  *See In re N.V.*, 877 N.W.2d 146, 151 (Iowa Ct. App. 2016) (placing the burden on "the department to formally notify" relatives, "even if the relatives were informally aware of the child's transfer to foster care").  The department only sent notices to A.W.'s maternal aunt and uncle, who were later determined to be unsuitable as placements.  K.C.'s mother reached out to the department on her own.

[5] The State also argues that the court's reliance on applicable administrative codes and the department's own manual are "problematic" because it has not been able to amend either.  But the State fails to explain how the court's expectation that the department follow its own policies and procedures is somehow an abuse of discretion, so we do not consider it here.  *See* Iowa R. App. P. 6.903(2)(g)(3) (waiving issues inadequately argued on appeal).

favor biological relatives over those created by adoption, but we place them "on equal footing." *See In re L.S.*, No. 23-1511, 2024 WL 111105, at *4 (Iowa Ct. App. Jan. 10, 2024). While the court may disagree with the department's finding that K.C.'s mother was a "relative," this does not make the placement decision unreasonable or irresponsible. Instead, it provides the framework and reasoning behind the department's ultimate decision to place A.W. with K.C.'s mother rather than the foster parents. We do note, however, that even if K.C.'s mother is given such relative status, this priority can be overcome by the child's best interests, which is "[o]ur ultimate concern." *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). Accordingly, we address this issue further as part of our best-interests analysis.

3. *Priority of Foster Parents for Placement.*

The State next argues the court should not have prioritized the foster parents under Iowa Administrative Code section 441-200.3(3)(a)(7). But it also concedes that this issue was never argued below. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Error-preservation requirements are still applicable, even in juvenile proceedings. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We therefore do not consider the merits of this argument.

4. *Consideration of Race in Placement Decision.*

The State also challenges the court's finding that the department considered race as part of its placement decision. *See* Iowa Admin. Code r. 441-200.3(3)(a)(4) (restricting placement selections from considering "[r]ace, color, or national origin . . . except when an Indian child is being placed" pursuant

to the Iowa ICWA). But the State did not challenge the court's finding that A.W. is not an "Indian child" or that this administrative code is somehow inapplicable to A.W. It also conceded that this issue was not argued below, so we similarly do not address it here. *See Meier*, 641 N.W.2d at 537.

5. *Consideration of Improper Evidence.*

Finally, the State alleges that the court relied on improper evidence because it considered allegations occurring before the department was appointed as guardian. But the State fails to provide a single example of what allegation the court improperly considered. Due to our role in appellate review, we decline to "speculate on the arguments [the State] might have made and then search for legal authority and comb the record for facts to support such arguments." *In re W.J.*, No. 21-1991, 2022 WL 610559, at *1 n.4 (Iowa Ct. App. Mar. 2, 2022) (citation omitted). Instead, we find this issue waived and do not consider its merits. *See* R. App. P. 6.903(2)(g)(3) (waiving issues inadequately argued on appeal).

B. *Best Interests of the Child.*

While we do not agree with the juvenile court's findings that the department acted unreasonably or irresponsibly, the State failed to preserve error on several issues. We therefore must still turn to the second prong and consider whether the department's removal as guardian is in A.W.'s best interests. *See K.D.*, 975 N.W.2d at 320*; In re I.P.*, No. 19-0715, 2019 WL 3317922, at *2 (Iowa Ct. App. July 24, 2019) ("Even if [the department] acted unreasonably in discharging its guardianship duties, we will not reflexively remove [the department] as guardian under section 232.118 if the removal is not in the child's best interests."). "In analyzing [A.W.'s] best interests, we 'give primary consideration to the child's

safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *K.D.*, 975 N.W.2d at 325 (citation omitted).

While the State makes only one vague argument on this issue—that A.W. was required to be placed with K.C.'s mother because priority is given to relatives—we find it is not in A.W.'s best interests for the department to be removed as guardian. Despite the court finding that placing A.W. with K.C.'s mother would be "trauma[tic]" and likely harmful, this case is distinguishable from times where the department truly acted against a child's best interests. *Compare In re N.M.*, No. 20-0898, 2020 WL 5946108, at *3 (declining to remove the department as guardian when it prioritized a suitable relative placement over unrelated foster parents), *with In re K.D.*, No. 21-1472, 2022 WL 469477, at *6 (Vaitheswaran, P.J., dissenting) (finding the department's decision to "snatch[ ] the children from the home" without warning "egregious"), *vacated by K.D.*, 975 N.W.2d at 322 (similarly admonishing the department for their "abrupt" removal of the children from their home "only to place them . . . with strangers"). The department did no such thing here. Instead, the department provided a general plan for A.W. to transition from the foster parents to K.C.'s mother. While Iowa courts generally prefer a more "measured" approach to introduce new relative placements, *see, e.g.*, *I.P.*, 2019 WL 3317922, at *4 (finding the department's approach "responsible" when it slowly increased visitation from three hours to overnights over a four-month period "as [the child] grew more comfortable"); *K.D.*, 975 N.W.2d at 322 (noting successful transfers "when it's done properly, slowly, and with the support of all of

the adults in the child's life" (citation omitted)), we are not tasked here with over-analyzing the department's transition plan but on A.W.'s best interests.

After reviewing the record, we cannot find that the foster parents met their burden in establishing the department's removal was in A.W.'s best interests. *See* Iowa Code § 232.118(1)(a) (placing "the burden to establish that the court-appointed guardian failed to act in the child's best interests" on "[t]he moving party"). They provided no evidence that K.C.'s mother was not a suitable placement but focused solely on their bond with A.W.[6] While we acknowledge A.W. has bonded to her foster parents, who "are the only adult caregivers she's ever known," this was considered by the department when it made its placement decision. But it also weighed this bond against K.C.'s mother's status as a relative, her willingness to provide for A.W., and her experience as a healthcare professional. It is not our role on appellate review to substitute our judgment for the department and make its placement decisions. *See In re J.H.*, No. 20-0081, 2020 WL 2988758, at *2 (Iowa Ct. App. June 3, 2020) (noting the court does not have authority "to direct a *specific* placement"). Instead, we "give deference to the decision of the guardian." *See* Iowa Code § 232.118(1)(b). The foster parents here do not convince us that removal of the department is warranted. Accordingly, we reverse the juvenile court's ruling and remand with instructions to reappoint the

---

[6] We recognize the benefit and importance to the child's health and well-being in being placed in foster care placements that provide familial care, as well as the benefit to a child in having a bond with those foster care placements. But if the length of time spent in foster care and bond was the only factor considered in removal of the department as guardian, such would be applicable to many children placed in non-relative foster care.

department as guardian. *See N.M.,* 2020 WL 5946108, at \*4 (remanding for reappointment when the moving party did not meet its removal burden).

**IV. Disposition.**

Because the juvenile court abused its discretion in removing the department as guardian, we reverse and remand with instructions to reappoint the department as guardian of A.W.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**